617 So.2d 1046 (1993)
Robert Carl HOEFERT, Appellant,
v.
STATE of Florida, Appellee.
No. 76714.
Supreme Court of Florida.
March 11, 1993.
Rehearing Denied May 25, 1993.
*1047 Richard J. Sanders, Gulfport, for appellant.
Robert A. Butterworth, Atty. Gen., and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Robert Carl Hoefert appeals his conviction for the first-degree murder of June Hunt and the attendant death sentence. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and reverse the conviction and vacate the sentence.
Hoefert's landlady discovered Hunt's body in Hoefert's apartment in St. Petersburg, Florida, on April 3, 1989. The body was partially nude, in a contorted jackknife position, and wrapped in several sheets and blankets along with Hunt's personal belongings and identification. Although a low concentration of cocaine was found in Hunt's blood, the medical examiner and toxicologist testified that the cocaine was not the cause of death. The medical examiner found no evidence of trauma, disease process, or sexual battery. However, the medical examiner testified that the decomposition of the body precluded finding evidence of sexual activity, bruising to the neck area, or hemorrhages in the face or eyes due to compression of the veins in the neck. The medical examiner concluded that the cause of death was homicidal violence, "probably due to a type of asphyxiation."
In addition to the medical examiner and toxicologist, the State introduced the testimony of four women who had been choked by Hoefert in the course of assaults or sexual batteries. Wesley Pope, who occupied the cell next to Hoefert's during Hoefert's incarceration for a previous attack, also testified about statements that Hoefert made to him, indicating that Hoefert derived a thrill from choking women during sexual intercourse in order to "catch a dying quiver" and that he squeezed rubber balls to strengthen his hands for choking. Pope also testified that Hoefert admitted that "he should have killed [a previous victim] because he wouldn't have been in trouble."
Hoefert's coworkers testified that on the morning of April 1 Hoefert bragged about having sex with a woman that he had picked up that night. The coworkers also testified that they saw Hoefert digging a large hole in his backyard on April 2, and that he refused them access to his padlocked apartment.
According to his testimony at trial, Hoefert met Hunt during the early morning hours of April 1, 1989, when she approached him in a doughnut shop and asked for a ride. Hoefert admitted that Hunt accompanied him to his apartment, but denied having sex with Hunt or choking her. Hoefert also testified that Hunt smoked crack cocaine at his apartment. Hoefert claimed that Hunt was alive when he left for work on the morning of April 1, and that he discovered her body on his living room floor when he returned from work that evening. Hoefert admits that he placed Hunt's belongings with her body and wrapped the body in bed linens. Hoefert testified that he was afraid to notify *1048 the police about Hunt's death as he had just been released from prison, and thus, initially planned to bury the body in his yard. Hoefert testified, however, that he abandoned that plan and fled to Texas.
Hoefert raises nine claims on appeal: 1) the evidence was insufficient to support the conviction for first-degree murder; 2) it was error to admit the similar-fact testimony of four previous victims; 3) it was error to admit the testimony of Hoefert's former cellmate as it was inadmissible character evidence; 4) the standard jury instruction on premeditation is fundamentally defective; 5) the trial court erred in excusing a potential juror for cause without giving the defendant the opportunity to question or rehabilitate the potential juror; 6) the homicide was not committed in a cold, calculated, and premeditated manner; 7) the death penalty is disproportionate in this case; 8) the sentencing jury's recommendation of death was tainted because the jury heard prejudicial evidence of nonstatutory aggravating circumstances that was introduced during the guilt phase; and 9) the trial court erred by considering nonstatutory aggravating factors, by failing to find appropriate mitigating factors, and by failing to conduct a balancing and weighing of the aggravating and mitigating factors.
We find the first issue to be dispositive as to Hoefert's appeal of the first-degree murder conviction and the death sentence. For the reasons discussed below, we find the evidence to be insufficient to support Hoefert's conviction for first-degree murder.
At the close of the State's evidence, defense counsel moved for a judgment of acquittal on the basis that Hunt could have died from the cardiotoxic effects of the cocaine found in her body. Defense counsel renewed the motion on the same grounds at the close of all evidence. The trial judge denied the motion both times. During the State's case, the medical examiner testified that there was no "reasonable possibility" that asphyxiation was not the cause of Hunt's death. The toxicologist also testified that there was "no question" that the amount of cocaine found in Hunt's body was not a toxic overdose. Thus, the State presented evidence that contradicted Hoefert's version of events, and the trial judge properly denied the motion for judgment of acquittal on the basis raised by defense counsel at trial. However, Hoefert also filed a post-trial motion for judgment of acquittal on the basis that there was "no evidence introduced to show premeditation." We find that this motion should have been granted.
Premeditation is the essential element which distinguishes first-degree murder from second-degree murder. Wilson v. State, 493 So.2d 1019 (Fla. 1986). Premeditation may be proven by circumstantial evidence. Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982), overruled on other grounds by Pope v. State, 441 So.2d 1073 (Fla. 1983). However, "[w]here the element of premeditation is sought to be established by circumstantial evidence, the evidence relied upon by the state must be inconsistent with every other reasonable inference." Cochran v. State, 547 So.2d 928, 930 (Fla. 1989). Where the State's proof fails to exclude a reasonable hypotheses that the homicide occurred other than by premeditated design, a verdict of first-degree murder cannot be sustained. Hall v. State, 403 So.2d 1319 (Fla. 1981).
"`Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted.'" Holton v. State, 573 So.2d 284, 289 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991) (quoting Larry v. State, 104 So.2d 352, 354 (Fla. 1958)).
In this case, the State was unable to prove the manner in which the homicide was committed and the nature and manner of any wounds inflicted. The medical examiner only established the cause of death as "probably asphyxiation" based upon "the lack of finding something [else]." There was no medical evidence of physical *1049 trauma to Hunt's neck, no evidence of sexual activity, and no evidence of genital injuries.
Even taking the evidence presented in the light most favorable to the State, as Cochran requires, the State merely established the following: Hunt accompanied Hoefert to his apartment and was found dead in that apartment several days later; the cause of Hunt's death was asphyxiation; Hoefert had strangled several other women while either raping or assaulting them; and Hoefert attempted to conceal his crime by failing to report Hunt's death to the authorities, by digging a large hole in his yard where he planned to bury Hunt's body, and by fleeing to Texas.
Although we find that the circumstantial evidence in this case is consistent with an unlawful killing, we do not find sufficient evidence to prove premeditation. Therefore, the conviction for first-degree murder is reversed and the death sentence vacated.
Having reversed the first-degree murder conviction, we need not reach any of the claims relating to the penalty phase. We also reject Hoefert's other guilt-phase claims, and find that only claims 2 and 3 merit more than brief discussion. Claim 4, which challenges the standard jury instruction on premeditation, has been rendered moot by the determination that premeditation was not proven in this case. Claim 5, charging that the court erred in excusing a potential juror for cause, is clearly refuted by the record in this case. In response to the judge's questioning, the excused venireman stated unequivocally that he would automatically vote against imposition of the death penalty in all cases without regard to the evidence shown or the instructions of the court.
Next, we reject claim 2 that the trial court erred in admitting the similar-fact testimony of four of Hoefert's prior victims. Hoefert contends that Williams[1] evidence is only admissible if the other offenses are "strikingly similar" to the charged offense. We find that the evidence in this case is sufficiently similar to be admitted as Williams evidence.
In Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959), the defendant hid in the back of a young woman's car in a parking lot, reached around from the back seat with a knife, stabbed her, threatened her, and raped her. The state introduced evidence that six weeks earlier, the same defendant had hidden in the back of another young woman's car at the same hour and in the same parking lot, but that he fled after that woman spotted him. This Court approved the admissibility of evidence of the prior act, concluding that because both acts were so similar, evidence of the prior act was relevant to prove that the same person committed the rape. Id. at 663.
The similar-fact testimony in this case was relevant to the issue of motive and to counter the defense's contention that the absence of visible trauma negated asphyxiation as the cause of death. Three of the women testified that Hoefert choked them while raping them, and that he derived sexual gratification from the choking. In the words of one witness, "the more I struggled, the more intent he became in choking around my throat... . He thrived on the fear, the more my body twitched ... the more he got into it." This testimony describes the central motive in Hunt's asphyxiation, to obtain sexual gratification by engaging in sex while choking the victim. All of the women testified that Hoefert initially grabbed them in some type of arm lock around the neck. Two of the women passed out when this neck restraint was applied, yet neither suffered visible neck injuries as a result. In addition to showing motive, this testimony was relevant to meet Hoefert's anticipated defense that the lack of medical evidence of trauma to Hunt's neck negated asphyxiation as the cause of death.
*1050 Finally, we reject claim 3 that the trial court erred in admitting the testimony of Hoefert's cellmate Pope. Although Hoefert claims that this testimony was inadmissible character evidence, we find that the testimony actually constituted an admission of a party-opponent that is admissible as an exception to the hearsay evidence rule. § 90.803(18), Fla. Stat. (1989). This Court has held admissible the statements of a defendant made either before or after the time of the crime charged, even when the testimony about the statements showed the commission of separate crimes or wrongs or cast the defendant's character in a bad light. See Swafford v. State, 533 So.2d 270, 275 n. 5 (Fla. 1988), cert. denied, 489 U.S. 1100, 109 S.Ct. 1578, 103 L.Ed.2d 944 (1989). However, like all evidence, the statements will only be admitted if relevant to prove a material fact in issue. § 90.401, Fla. Stat. (1989).
In this case, Hoefert's statements to Pope were relevant to both intent and motive, and also corroborated the Williams evidence from the four prior victims. Hoefert's statements that "he wished he killed" the prior battery victim are relevant to intent in a murder trial. The statements concerning Hoefert's sexual proclivities are relevant to the motive for Hunt's asphyxiation. Thus, the trial court did not err in admitting Pope's testimony.
Second-degree murder is defined as the "unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual." § 782.04(2), Fla. Stat. (1987). Based upon the record in this case, we find sufficient evidence to sustain a conviction of second-degree murder.
In accordance with section 924.34, Florida Statutes (1991), this case is remanded to the trial court with instructions to enter a judgment for second-degree murder and sentence the appellant accordingly.
It is so ordered.
BARKETT, C.J., and OVERTON, SHAW, KOGAN and HARDING, JJ., concur.
GRIMES, J., dissents with an opinion, in which McDONALD, J., concurs.
GRIMES, Justice, dissenting.
I believe the evidence was sufficient to convict Hoefert of first-degree murder.
It is undisputed that the victim accompanied Hoefert to his house where she was later found dead. The cause of death was homicidal violence through asphyxiation. On the day before the body was found, Hoefert was seen digging a large hole in his back yard and refused friends access to his padlocked apartment. He later fled to Texas and changed his name and appearance.
In addition, four women testified that Hoefert had choked them during the course of being raped by him. While Hoefert was in jail for a prior crime, he explained to his cellmate that his nickname was "Hammer" because he got his sex by hammering "the shit out of them." Hoefert told his cellmate that during sexual intercourse you get the "dying quiver" if you are choking them. Most significantly, the cellmate also testified that Hoefert described the offense for which he was then serving time and said that he "was choking the shit out of her and I should have killed her and I wouldn't have had to go through this shit." The clear inference in this statement is that next time he would kill his victim. He did just that by murdering June Hunt only sixteen days after getting out of jail.
I am convinced that the evidence sufficiently presented a jury question on the issue of premeditated murder.
I respectfully dissent.
McDONALD, J., concurs.
NOTES
[1] Similar-fact evidence is commonly called Williams evidence based upon the case which established the general rule of admissibility of similar-fact evidence even though the evidence points to the commission of another crime. See Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).