684 So.2d 732 (1996)
Dwayne KIRKLAND, Appellant,
v.
STATE of Florida, Appellee.
No. 84353.
Supreme Court of Florida.
October 24, 1996.
Rehearing Denied December 16, 1996.
*733 Steven L. Seliger of Garcia and Seliger, Quincy, for Appellant.
Robert A. Butterworth, Attorney General and Barbara J. Yates, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Dwayne Kirkland. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. While we find that there is insufficient evidence in the record to support the finding of premeditation necessary to sustain Kirkland's first-degree murder conviction and sentence of death, we do find that the record supports a conviction of second-degree murder.
The record reflects the following. At some time on April 13 or 14, 1993, Coretta Martin was murdered in Blountstown, Florida. Her murder was accomplished by "a very deep, complex, irregular wound of the neck." That wound cut off Coretta Martin's ability to breathe and caused extensive bleeding. At the time of Coretta Martin's murder, Kirkland was living with her mother, Teresa Martin. Coretta Martin and her brother, Gregory, were living in the same dwelling with Kirkland and Teresa Martin.
When the murder occurred, Teresa Martin and Gregory Martin were in Tallahassee. When they returned home on the night of April 14, Teresa Martin discovered Coretta Martin's dead body in a bedroom of their dwelling.
*734 On April 14, Kirkland left Blountstown, went to Quincy, and then to Atlanta, Georgia. The following day, Kirkland traveled from Atlanta to Fort Myers, Florida. Kirkland was arrested in Fort Myers on April 19, 1993. A grand jury handed down an indictment for first-degree murder against Kirkland on May 17, 1993.
On June 29, 1993, defense attorneys moved to have experts appointed to determine Kirkland's competency. On July 2, 1993, the trial court appointed Drs. Ralph Walker and Harry McClaren to examine Kirkland. After these examinations, the trial court entered an order on July 21, 1993, committing Kirkland to a Department of Health and Rehabilitative Services (HRS) mental health facility. However, on September 20, 1993, an HRS forensic administrator filed a competency evaluation indicating that Kirkland was competent to proceed. On October 27, 1993, the trial court entered an order declaring Kirkland competent to stand trial.
On April 20, 1994, the trial court ordered that Kirkland be examined by Dr. Lawrence Annis to determine his competency at the time of the crime. Jury selection took place on June 28, and the trial began on June 29, 1994. Annis testified at trial that Kirkland was mildly retarded but was sane at the time the offense was committed. Despite this evaluation, Kirkland pursued an insanity defense at trial.
On July 1, 1994, the jury convicted Kirkland of first-degree murder. Then, on July 5, 1994, the jury recommended that the sentence of death be imposed.
On August 29, 1994, the trial judge entered a judgment and sentence that found Kirkland guilty of first-degree murder and announced that death was the appropriate penalty.
On appeal, Kirkland raises nine claims: 1) the trial court erred in failing to grant a motion for acquittal; 2) the trial court erred in finding that the murder was committed during the course of a sexual battery and subsequently using that finding as an aggravator; 3) the evidence was insufficient to support a finding that the killing was heinous, atrocious, or cruel; 4) the heinous, atrocious, or cruel instruction was constitutionally inadequate; 5) the penalty-phase jury instructions were unclear; 6) Kirkland was not competent to be sentenced; 7) death was a disproportionate sentence; 8) the sentencing order was inadequate in its treatment of mitigation; and 9) the trial court erred by refusing to grant a mistrial in light of the prosecution's closing argument.
We find that this appeal, as to the conviction for first-degree murder and the sentence of death, is resolved through addressing only the first issue. We find that the evidence of premeditation is insufficient to support a conviction for first-degree murder.
The State's case was based upon circumstantial evidence. Kirkland moved for a judgment of acquittal at the conclusion of the State's case. The trial court denied Kirkland's motion. We have stated that such a motion should be granted unless the State can "present evidence from which the jury can exclude every reasonable hypothesis except that of guilt." State v. Law, 559 So.2d 187, 188 (Fla.1989). We find that the circumstantial evidence in this case "is not inconsistent with any reasonable exculpatory hypothesis as to the existence of premeditation." Hall v. State, 403 So.2d 1319, 1321 (Fla.1981). Indeed, a review of the record forces us to conclude, as a matter of law, that the State failed to prove premeditation to the exclusion of all other reasonable conclusions. "Where the State's proof fails to exclude a reasonable hypotheses [sic] that the homicide occurred other than by premeditated design, a verdict of first-degree murder cannot be sustained." Hoefert v. State, 617 So.2d 1046, 1048 (Fla. 1993).
Premeditation is defined as follows:
Premeditation is a fully formed conscious purpose to kill that may be formed in a moment and need only exist for such time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act.
Asay v. State, 580 So.2d 610, 612 (Fla.1991). The State asserted that the following evidence suggested premeditation. The victim suffered a severe neck wound that caused her to bleed to death, or sanguinate, or suffocate. *735 The wound was caused by many slashes. In addition to the major neck wound, the victim suffered other injuries that appeared to be the result of blunt trauma. There was evidence indicating that both a knife and a walking cane were used in the attack. Further, the State pointed to evidence indicating that friction existed between Kirkland and the victim insofar as Kirkland was sexually tempted by the victim.
We find, however, that the State's evidence was insufficient in light of the strong evidence militating against a finding of premeditation. First and foremost, there was no suggestion that Kirkland exhibited, mentioned, or even possessed an intent to kill the victim at any time prior to the actual homicide. Second, there were no witnesses to the events immediately preceding the homicide. Third, there was no evidence suggesting that Kirkland made special arrangements to obtain a murder weapon in advance of the homicide. Indeed, the victim's mother testified that Kirkland owned a knife the entire time she was associated with him. Fourth, the State presented scant, if any, evidence to indicate that Kirkland committed the homicide according to a preconceived plan. Finally, while not controlling, we note that it is unrefuted that Kirkland had an IQ that measured in the sixties.
In Hoefert, we were unable to find evidence sufficient to support premeditation in a situation in which Hoefert had established a pattern of strangling women while raping or assaulting them. Evidence was presented in that case indicating that the homicide victim, found dead in Hoefert's dwelling, was likewise asphyxiated. Despite the pattern of strangulation, the discovery of the victim in Hoefert's dwelling, and efforts by Hoefert to conceal the crime, this Court found that premeditation was not established. Hoefert, 617 So.2d at 1049. In this case, there is no evidence that Kirkland had established a pattern of extreme violence as had Hoefert. A comparison of the facts in Hoefert and the instant case requires us to find, if the law of circumstantial evidence is to be consistently and equally applied, that the record in this case is insufficient to support a finding of premeditation.
The record leads us to conclude that, while the evidence does support a finding that Kirkland committed an unlawful killing, there is insufficient evidence to establish premeditation. Accordingly, we must reverse Kirkland's conviction for first-degree murder and vacate his sentence of death. In so holding, we note that Kirkland was tried for first-degree premeditated murder. There was no attempt to establish first-degree felony murder or to instruct the jury as to that alternative. Further, the record does not support a conviction of felony murder. This does not mean that Kirkland is not guilty of an unlawful killing. Second-degree murder is defined as "[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual." § 782.04(2), Fla. Stat. (1991). We find that the record in this case does support a conviction for second-degree murder.
All but one of Kirkland's other issues are mooted by our resolution of the premeditation issue. The mooted claims all contest alleged mistakes made during the penalty phase. In light of our reversal of Kirkland's first-degree murder conviction and the vacation of his death sentence, we need not address the penalty-phase issues.[1]See Hoefert, 617 So.2d at 1049. Kirkland does raise, however, one guilt-phase issue that we must address. He claims that the prosecutor made improper comments during the closing argument. Specifically, the prosecutor made a reference to two tape recordings of interviews with Kirkland that were not in evidence. A tape recording of an interview with Kirkland on April 22, 1993 was introduced at trial. There were two other tape recordings, one on April 21 and one on May 13, 1993, that were not introduced at trial. Defense counsel, in the closing *736 argument, reminded the jury that they had not heard the other two tapes. The prosecutor, in rebuttal, told the jury that the defense also had access to the other two tapes. The defense objected that such a comment was a reflection on Kirkland's failure to testify. The trial court sustained the objection but denied a motion for mistrial. "A comment is impermissible if it is `fairly susceptible' of being viewed by the jury as referring to a defendant's failure to testify." Dailey v. State, 594 So.2d 254, 258 (Fla.1991)(citing State v. DiGuilio, 491 So.2d 1129 (Fla.1986)). Surely the remark by the prosecutor was improper in this case. The trial court correctly sustained the objection. This single remark, however, did not warrant a mistrial. Further, in view of the entire record, we find beyond a reasonable doubt that the error was harmless.
In accordance with our determination that the record supports a conviction for second-degree murder, section 924.34 of the Florida Statutes (1991)[2] authorizes us to remand this case to the trial court with instructions to enter judgment against Kirkland for second-degree murder and sentence him accordingly.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, HARDING and ANSTEAD, JJ., concur.
GRIMES and WELLS, JJ., concur in result only.
NOTES
[1] The issue of Kirkland's competency at sentencing is mooted as to the sentencing proceeding that took place on August 29, 1994.
[2] This section reads:

When an appellate court determines that the evidence does not prove the offense for which the defendant was found guilty but does establish his guilt of a lesser statutory degree of the offense or a lesser offense not necessarily included in the offense charged, the appellate court shall reverse the judgment and direct the trial court to enter judgment for the lesser degree of the offense or for the lesser included offense.
§ 924.34, Fla. Stat.(1991).