715 So.2d 940 (1998)
Curtis Champion GREEN, Appellant,
v.
STATE of Florida, Appellee.
No. 86983.
Supreme Court of Florida.
May 21, 1998.
Rehearing Denied August 10, 1998.
*941 Glenn Anderson, Winter Haven, for Appellant.
Robert A. Butterworth, Attorney General and Robert J. Landry, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
Curtis Champion Green appeals his conviction for first-degree murder and the imposition of a sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we reverse the first-degree murder conviction and vacate the death sentence because the evidence, under the unusual factual circumstances of this case, is insufficient to prove premeditation. However, we do find that the record supports a conviction of second-degree murder.

FACTS
The record reflects the following facts. On the night of her murder, Karen Kulick, the victim in this case, was arrested for disorderly intoxication and resisting arrest without violence. The incident giving rise to this arrest took place at Gulledge Bail Bonds. Randy Gulledge was owner of the bail bond agency as well as the owner of a delicatessen. Kulick was Gulledge's former girlfriend and former employee at the restaurant. Kulick visited Gulledge's establishment on the evening of May 21, 1988. Gulledge testified that Kulick was angry and intoxicated at the time of her visit. Gulledge stated that, "[I] just told her to go on, you're drunk, ain't no sense in talking." Kulick refused to leave and Gulledge telephoned the police. An officer responded and temporarily resolved the situation by convincing Kulick to leave the establishment. She returned, however, a few minutes later. The officer arrested her and she became angry and screamed obscenities at the officer and Gulledge. Kulick was released from custody a few hours later at 2 a.m. on May 22.
Kulick's body was found on Masterpiece Gardens Road in Polk County, Florida, at approximately 3:30 a.m. on May 22. The only apparel worn by Kulick was a pair of shoes. Her body had been dragged from the side of the road and displayed in the middle of the intersection with her legs spread apart. Her body exhibited evidence of stab wounds and blunt trauma, but the cause of death was manual strangulation. At the time of her death, Kulick's blood alcohol level was.106.
The police conducted interviews with Kulick's acquaintances shortly after the discovery of her body. Green and Barney Franklin were questioned during the initial investigation. Green and Franklin told the detectives that they were together at Franklin's trailer during the time in question.
The police investigation of the murder then remained dormant for approximately six years. In October 1994, additional interviews were conducted with Green and Franklin. Franklin was contacted by Detective Larry Ashley at the Baker Correctional Institute where he was serving an eighteen-year prison term for sexual battery. Franklin told Ashley, "I know why you're here, you're here about that ... Karen Kulick girl." Franklin proceeded to implicate Green in Kulick's murder. Franklin and Green were subsequently indicted for Kulick's murder and arrested.
*942 Franklin testified on behalf of the State at Green's trial and recounted the following events. At the time in question, Green was living with Franklin and Franklin's wife in their trailer. On the afternoon of May 21, 1988, Green and Clyde Price, Jr., Franklin's stepson, went to Kulick's residence to pick her up. Franklin testified that Green and Price returned without Kulick, and that Green "was hollering and screaming about when he went to pick them up out there her daddy, or adopted daddy, got after them with a gun. So he come back and hollering that he was going to kill her before the night was out."[1] Franklin testified that later in the evening he drank vodka with Kulick and then drove her to Gulledge's establishment. Franklin stated that he returned to his trailer where he, his wife, and Green drank coffee together and then went to bed around 1 a.m. Franklin said that he and his wife were awake in bed at 1:30 a.m. when Kulick telephoned and asked him for a ride from jail. Franklin asserted that he refused to pick her up and returned to bed. Franklin stated that he heard Green drive away in his car shortly after he went back to bed. Franklin said that his wife also heard Green drive off in his car. Franklin claimed that he awoke the next morning to find Green outside the trailer cleaning his car. Franklin testified that he teased Green that Kulick was approaching the trailer, and that Green responded, "You won't see that bitch coming down through there.... You can believe that." Franklin also testified that Green danced after making the comment.[2]
Franklin's wife testified that the afternoon before the murder she overheard Green say, "I'll get even with the bitch, I'll kill her." Donna Snipes, Franklin's stepdaughter, also testified that she overheard Green say, "I'll get the bitch." Mrs. Franklin testified that she did not observe Green at the trailer on the evening of May 21, as claimed by her husband. Mrs. Franklin further stated that she did not have coffee with Green that evening; she was asleep at 1:30 a.m.; she never heard the telephone ring; and she did not hear Green leave in his car. Mrs. Franklin recalled that she learned of Kulick's death from a television report. She stated that when she informed her husband about the murder, he "didn't act shocked" and "it didn't bother him." Mrs. Franklin also said that she noticed scratches on her husband's back while she was telling him about the murder.
Angelo Gay testified that he had a conversation with Green in the summer of 1995 while the men were incarcerated at the Polk Correctional Institute. Gay testified that Green said he and his buddy picked up a girl in a "truck or a van or something" in front of the jail. Green then allegedly told Gay that he and his friend "did things to the girl" and "the bitch got crazy on us." Gay stated that Green said they threw the girl's body out on the highway wearing only her shoes. Gay testified that he was able to contact the state attorney who was prosecuting Green with the information regarding Kulick's murder because Green told him the name of the prosecutor. Gay also testified that he received no consideration from the State in return for his testimony.
The prosecutor summarized the State's theory of Kulick's murder in closing arguments to the jury. The prosecutor informed the jury that he did not believe Franklin's testimony to be totally truthful, even though Franklin was presented as a witness by the State. The prosecutor argued, "Barney Franklin took the stand. Barney Franklin told you he stayed home.... Barney Franklin didn't stay at home. This girl wasn't killed by one person, this girl was killed by two people." The prosecutor also argued that the fact that Kulick died from strangulation indicated that her murder was premeditated.
Green was convicted of first-degree murder and the jury recommended the death penalty by a vote of ten to two. The judge *943 followed the jury's recommendation and sentenced Green to death. In his sentencing order, the trial judge found the following two statutory aggravating circumstances: (1) Green was previously convicted of another felony involving the use or threat of violence to some person;[3] and (2) the crime was especially heinous, atrocious, or cruel. The judge found the following two statutory mitigating circumstances: (1) the crime was committed while Green was under the influence of extreme mental or emotional disturbance; and (2) Green's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.[4] The judge gave "significant weight" to the former circumstance and only "some weight" to the latter. The judge also analyzed eighteen separate nonstatutory mitigating circumstances.[5] After Green was convicted and sentenced, Franklin pleaded nolo contendere to being an accessory after the fact and was sentenced to five years in prison.

ANALYSIS
In this appeal, Green raises seven guilt-phase claims[6] and two penalty-phase claims.[7] Six of Green's guilt-phase claims are either procedurally barred or without merit and unworthy of discussion.[8] For the purposes of our review, we address only Green's challenge to the sufficiency of the evidence to support the conviction. Upon reviewing the record, we find that the evidence is insufficient to demonstrate beyond a reasonable doubt that Green is guilty of premeditated first-degree murder. Our resolution of this issue renders Green's penalty-phase claims moot.
Premeditation is the essential element that distinguishes first-degree murder from second-degree murder. Coolen v. State, 696 So.2d 738, 741 (Fla.1997). Premeditation is defined as
more than a mere intent to kill; it is a fully formed conscious purpose to kill. This *944 purpose to kill may be formed a moment before the act but must also exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act.
Id. (quoting Wilson v. State, 493 So.2d 1019, 1021 (Fla.1986)). "Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted." Holton v. State, 573 So.2d 284, 289 (Fla.1990) (quoting Larry v. State, 104 So.2d 352, 354 (Fla.1958)). Where the State's proof fails to exclude a reasonable hypothesis that the homicide occurred other than by premeditated design, a verdict of first-degree murder cannot be sustained. Coolen, 696 So.2d at 741; Kirkland v. State, 684 So.2d 732, 734 (Fla.1996); Terry v. State, 668 So.2d 954, 964 (Fla.1996).
We find that the record in this case supports the reasonable hypothesis that Kulick's murder was committed without any premeditated design. On the night of the murder, Kulick was intoxicated and had a heated argument with Gulledge, her former boyfriend and employer. Kulick was arrested and charged with disorderly conduct and resisting arrest. She was angry and intoxicated upon her release from custody, as indicated by her blood alcohol level at the time of her death. Gay testified that Green confessed that he and a friend picked Kulick up in front of the jail and "did things" to her. Green related to Gay that "the bitch got crazy" and he and his friend killed her. There were no witnesses to the events immediately preceding the homicide. Although Kulick had been stabbed three times, no weapon was recovered and there was no testimony regarding Green's possession of a knife. Moreover, there was little, if any, evidence that Green committed the homicide according to a preconceived plan. Finally, although not controlling, it is undisputed that Green's intelligence is exceedingly low.
The State argues that the nature of Kulick's wounds provides circumstantial evidence of premeditation. See Holton, 573 So.2d at 289. The State also notes that several witnesses testified to hearing Green proclaim in a fit of rage that he was going to kill Kulick. However, the nature of Kulick's wounds and the testimony regarding Green's alleged statements are insufficient evidence of premeditation in light of the strong evidence militating against a finding of premeditation. See Kirkland, 684 So.2d 732 (premeditation not found despite evidence of a prolonged attack against the victim and a history of friction between the victim and the defendant); Hoefert v. State, 617 So.2d 1046 (Fla.1993)(premeditation not found despite evidence that the strangled victim was found partially nude and the defendant had a history of strangling women while raping them).
Although we find the evidence in this case is insufficient to support Green's conviction for first-degree murder, we do find that the evidence is consistent with an unlawful killing. Consequently, we reverse Green's conviction for first-degree murder and vacate his death sentence, and, in accordance with section 924.34, Florida Statutes (1997), we remand this case to the trial court with instructions to enter a judgment for second-degree murder and to sentence Green accordingly.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
NOTES
[1] Price testified that when he and Green approached Kulick's house the "[n]ext thing I know there was a gun, like they didn't have a doorway, it wasit's a doorway but no door there, it's a curtain up over there and I seen a gun sticking through there and I run."
[2] Green's dance was described as "[j]ust a grin or something and little funny dance he would do, sort of jump up and down and holler about it."
[3] Green was convicted in 1980 of aggravated assault and extortion by threats.
[4] Significant mental-health evidence was presented to the jury. Specifically, a mental-health expert testified that Green suffers from post-traumatic stress disorder, chronic dysthemia, and a personality disorder. The expert also testified that Green scored a 73 on one IQ testing instrument. On another test, he scored "at a fifth percentile. He scores no higher than five percent of the general U.S. population for his age group on that particular test." The trial judge in his sentencing order summarized the mental-health evidence in the following way:

Mental health expert testimony, other witness testimony, and anecdotal evidence establish that the Defendant's mental and emotional equilibrium teetered on the edge of impulse, excess, or rage, such that Defendant's behavior prior to this killing shows that his mental condition contributed to his criminal behavior.
[5] The following proposed nonstatutory mitigation was addressed: (1) the defendant's behavior at trial was acceptable; (2) the defendant grew up without a father figure in the home; (3) the defendant's mother suffers from mental illness; (4) the defendant's role in the offense is unclear; (5) the defendant was possibly an accomplice; (6) the defendant suffered a difficult childhood; (7) the victim was not sexually assaulted; (8) the defendant suffers from a history of alcohol and drug abuse; (9) the defendant suffers from a limited intelligence quotient; (10) the defendant suffers from learning problems; (11) the defendant suffers from an organic brain disorder; (12) the defendant had little or no parental guidance in his formative years; (13) the defendant suffers from a poor self-concept developed during childhood; (14) the defendant would adjust adequately to life imprisonment; (15) the defendant suffers from an impoverished background; (16) the defendant is unable to reason abstractly; (17) the defendant has a history of suicide attempts and self-destructive behavior; and (18) the defendant is unwavering in his declaration of innocence.
[6] Green asserts that (1) prosecutorial comments as to Kulick's prostitution and Green's "pandering" denied Green a fair trial; (2) it was error to allow the trial to proceed in light of the defense's unwillingness to depose State witnesses; (3) the trial judge failed to maintain a proper atmosphere in the courtroom; (4) the trial judge failed to grant a motion for mistrial; (5) the trial judge erred in allowing Detective Larry Ashley's testimony; (6) the trial judge erred in allowing Deputy Sheriff Don Corbitt to testify as to the related alibis forwarded by Green and Franklin; and (7) the evidence is insufficient to support Green's conviction for first-degree murder.
[7] Green argues that (1) the trial judge erred in allowing him to speak to the penalty-phase jury, and (2) the process by which a recommendation of death is made is fundamentally flawed.
[8] Claim one is procedurally barred because there was no defense objection. Claims two through six are without merit.