IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

RICHARD BARNES,

      Appellant,

 v.                                          Case No.  5D15-2798

STATE OF FLORIDA,

      Appellee.

_____/

Opinion filed May 12, 2017

Appeal from the Circuit Court
for Seminole County,
Donna L. McIntosh, Judge.

James S. Purdy, Public Defender, and
Kevin R. Holtz, Assistant Public Defender,
Daytona Beach, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Samuel A. Perrone,
Assistant Attorney General, Daytona
Beach, for Appellee.


ON MOTION FOR REHEARING

EVANDER, J.

      Upon consideration of the State's motion for rehearing, we deny the motion but

withdraw our earlier opinion and substitute the following revised opinion in its place:

Richard Barnes was convicted, after a jury trial, of first-degree murder. On appeal, he contends that there was insufficient evidence of premeditation to support a first-degree murder conviction.[1] In his supplemental brief,[2] he argued that defense counsel's failure to raise this issue below constituted ineffective assistance of counsel apparent from the face of the record. We agree. Accordingly, we reverse and remand this case to the trial court with instructions to enter a judgment of second-degree murder and to sentence Barnes accordingly. We conclude that the other issues raised on appeal by Barnes are without merit.

The evidence presented below showed that Barnes was an often-times homeless drug addict living in Orlando, Florida. He had previously been romantically involved with the victim. According to a statement Barnes gave to law enforcement, that romantic relationship ended approximately two months prior to the victim's murder. The victim had unsuccessfully sought to help Barnes overcome his drug addiction issues, even after their romantic relationship ended. For example, she would safe-keep Barnes' Electronic Balance and Transfer ("EBT") card because Barnes had sold or traded the card in the past to obtain illegal drugs.

The victim owned an insurance agency office located in Sanford, Florida. She was murdered at her office around noon on January 6, 2014. Based on the testimony of two neighbors, Barnes was placed at the victim's office prior to, and immediately after, the

---

[1] Barnes was not charged with felony murder.

[2] This court ordered supplemental briefing on the issue of whether counsel's purported failure to challenge the sufficiency of the State's evidence regarding premeditation constituted ineffective assistance of counsel apparent from the face of the record.

sound of four rapid gunshots. Both of the neighbors had previously seen Barnes outside the victim's office doing odd jobs. One of the neighbors testified that she had previously witnessed Barnes and the victim interacting in a manner that led her to believe that they were involved in a relationship. A client found the victim's body in the victim's office within minutes after Barnes was seen quickly walking away from the scene.

The medical examiner's testimony reflected that the victim had been shot four times.[3] The officers who responded to the scene found some of the victim's desk drawers pulled open and disheveled in a manner consistent with someone rummaging through them. Other desk drawers appeared untouched. The victim's purse was located in one of the "untouched" drawers. Barnes' EBT card was found in the victim's purse. There was no evidence that any property had been taken from the victim's office.

In a statement Barnes gave to the police two days later, he claimed that he had never left Orlando on January 6. However, an Orlando pastor testified that on the evening of January 5, he had provided Barnes with forty dollars, in part, because Barnes had stated that he needed to obtain a bus pass to travel to Sanford. Notably, the EBT card was scheduled to be "reloaded" on January 9.

At the conclusion of the State's evidence, Barnes' counsel unsuccessfully moved for a judgment of acquittal, arguing that there was a lack of evidence that Barnes had committed the homicide or that he possessed an intent to kill the victim. However, defense counsel failed to argue the sufficiency of the evidence (or lack thereof) regarding premeditation.

---

[3] The victim was shot twice in the head, once in the chest, and once in the arm.

3

After the denial of his motion for judgment of acquittal, Barnes testified on his own behalf. He acknowledged that he had known the victim for approximately two and one-half years and that they had been involved in a romantic relationship until a few months prior to her death. Barnes candidly acknowledged his drug addiction problem and explained that the victim retained his EBT card because he had previously used the cash on the card to buy illegal drugs. When the card was reloaded on the ninth day of each month, Barnes and the victim would grocery shop together.

According to Barnes, he intended to travel to Sanford on January 9 to obtain his EBT card and go grocery shopping. He admitted receiving forty dollars from the Orlando pastor on the evening of January 5, but stated that he used the money to buy drugs instead of using it to travel to Sanford. Barnes denied being in Sanford on January 6, denied killing the victim, and denied being mad at the victim.

At the conclusion of the defense's case, Barnes' counsel renewed the motion for judgment of acquittal. Once again, there was no argument directed to the sufficiency of the State's evidence on the element of premeditation. After the denial of the renewed motion for judgment of acquittal, defense counsel stipulated to the jury receiving the standard jury instructions on premeditated first-degree murder, second-degree murder, and manslaughter.

On appeal, Barnes argues, *inter alia*, that the State did not present legally sufficient evidence of premeditation to prove first-degree murder. In support thereof, Barnes observes that there was no evidence that he had previously made threatening statements to the victim, nor was there any evidence of prior altercations between himself and the victim. Barnes further observes that in its closing argument, the State cited little, if any,

4

evidence of premeditation.  Specifically, in summarizing the State's theory of the case, the prosecutor argued to the jury:

> A reasonable inference would be that they had a conversation wherein he requested his EBT card and she told him -- I believe he said that she's very sharp with her words. However, she said, no, thank you.  Right?  And he got angry. He got so angry that he put four bullets in here [sic].  And after he did that, he freaked out.  He freaked out.  He put four bullets in a person he'd known for a few years.
>
> . . . .
>
> So he may not have taken the bus but he got to Sanford because folks saw him there.  Now, he got to that office with a .40 caliber firearm.  All right?  He got there with that gun. He took that between 45 minutes to an hour drive -- or half an hour, an hour drive from Orlando to Sanford with the .40 caliber in his pocket, or however he was holding it.  Walked in that door, walked up to [the victim].  Now, we know that he'd been doing crack -- he'd been doing drugs, so what's a reasonable inference?  He's all amped up.  Where's my card? Where's my card?  Where's my card?  I'm not giving you your card.  Get out of here.  Oh, oh, is that how it's going to be? Pop, pop, pop, pop.

In its initial answer brief, the State correctly argued that Barnes had failed to challenge the sufficiency of the State's evidence of premeditation below.  In its supplemental answer brief, the State argued that the evidence was sufficient to establish premeditation, particularly where the evidence reflected that Barnes shot the victim four times.

"Premeditation" is the essential element that distinguishes first-degree murder from second-degree murder.  *Green v. State*, 715 So. 2d 940, 943 (Fla. 1998).  As the Florida Supreme Court explained, premeditation "is not just the intent to kill; it is 'a fully formed conscious purpose to kill.  This purpose may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act

5

to be committed and the probable result of that act.'" *Evans v. State*, 177 So. 3d 1219, 1240 (Fla. 2015) (quoting *Bolin v. State*, 117 So. 3d 728, 738 (Fla. 2013)). Premeditation can be inferred from facts that include: the nature of the weapon used; the presence or absence of adequate provocation; previous difficulties between the parties; the manner in which the homicide was committed; and/or the nature and the manner of the wounds inflicted. *Id.* Where the evidence presented by the State fails to exclude a reasonable hypothesis that the homicide occurred other than by premediated design, a verdict of first-degree murder cannot be sustained. *Green*, 715 So. 2d at 944.

In the instant case, the State's primary evidence that would support an inference that the murder was premeditated was the fact that the victim was shot four times. Multiple wounds to a victim's vital organs are evidence that can support a finding of premeditation. *See Jackson v. State*, 180 So. 3d 938, 956 (Fla. 2015) ("When a victim is deliberately stabbed with a knife several times in vital organs, as occurred here, the manner of death can provide circumstantial evidence of premeditation."); *Perry v. State*, 801 So. 2d 78, 85-86 (Fla. 2001) ("Although multiple stab wounds alone do not prove premeditation, the nature and location of these wounds do support the finding of premeditation. . . . [T]he deliberate use of a knife to stab a victim multiple times in vital organs is evidence that can support a finding of premeditation.").

However, the fact that a defendant inflicts more than one potentially fatal injury on a victim does not, in and of itself, establish premeditation. For example, in *Kirkland v. State*, 684 So. 2d 732 (Fla. 1996), the evidence established that the victim suffered "a severe neck wound" that consisted of several slashes, causing her to bleed to death. *Id.* at 734-35. In addition to the neck wound, the victim suffered other injuries resulting from blunt trauma. *Id.* at 735. There was evidence that both a knife and a walking cane had

6

been used in the attack.  *Id.*  In finding that the State's evidence was insufficient to establish premeditation, the supreme court stated:

> First and foremost, there was no suggestion that Kirkland exhibited, mentioned, or even possessed an intent to kill the victim at any time prior to the actual homicide.  Second, there were no witnesses to the events immediately preceding the homicide.  Third, there was no evidence suggesting that Kirkland made special arrangements to obtain a murder weapon in advance of the homicide.  Indeed, the victim's mother testified that Kirkland owned a knife the entire time she was associated with him.  Fourth, the State presented scant, if any, evidence to indicate that Kirkland committed the homicide according to a preconceived plan.  Finally, while not controlling, we note that it is unrefuted that Kirkland had an IQ that measured in the sixties.

*Id.*

Similarly, in *Green*, the State's evidence of premeditation was held to be insufficient notwithstanding evidence that the victim had been stabbed three times and had died from manual strangulation.  715 So. 2d at 940.  In so holding, the supreme court emphasized that "there was little, if any, evidence that Green committed the homicide according to a preconceived plan."  *Id.* at 944.

Here, the State presented little, if any, evidence that Barnes committed the murder according to a preconceived plan or that he had exhibited, mentioned, or even possessed an intent to kill the victim at any time prior to the actual homicide.[4]  Furthermore, there was no evidence that Barnes had previously threatened the victim or that he was angry with the victim prior to arriving at her office on the date of the homicide. Indeed, the State's

---

[4] The State argues that Barnes' possession of a firearm supports an inference of premeditation.  However, there was no evidence that Barnes carried the weapon for the purpose of shooting the victim.  Indeed, there was no evidence as to how and when Barnes came into possession of the murder weapon.

7

theory of the case, as reflected in the prosecutor's closing argument, was that Barnes went to the victim's office to retrieve his EBT card and that when the victim refused to give him the card, he got so angry that he shot her and then "freaked out." The State further suggested that Barnes' actions were influenced by the fact that he had been using crack cocaine and was "all amped up."

In summary, the most reasonable inference arising from the State's evidence was that in a moment of rage and anger, fueled by the use of crack cocaine, Barnes shot the victim four times in rapid succession immediately after she refused to give him his EBT card. Accordingly, we conclude that the State's evidence was insufficient to prove premeditation.[5]

---

[5] The State cites to several cases where the evidence was held to be sufficient to establish premeditation. However, in each of those cases, the State's evidence of premeditation was stronger than the evidence in the instant case. *See Griffin v. State*, 474 So. 2d 777, 780 (Fla. 1985) (during commission of armed robbery, defendant shot store clerk twice, without provocation, even though clerk had complied with defendant's demands); *Squires v. State*, 450 So. 2d 208, 212-13 (Fla. 1984) (after abducting victim from service station and robbing him of undetermined amount of money and cigarettes, defendant shot victim first with shotgun and then four times with revolver at extremely close range); *Washington v. State*, 432 So. 2d 44, 47 (Fla. 1983) (while deputy was questioning driver during investigatory stop, defendant got out of back seat of car, walked around rear of car, and shot deputy four times); *Waterman v. State*, 163 So. 569, 569 (Fla. 1935) (after viewing altercation between victim and housekeeper, defendant went into house, procured pistol, returned to scene of altercation and shot victim six times); *Skanes v. State*, 821 So. 2d 1102, 1105 (Fla. 5th DCA 2002) (defendant was jealous of former girlfriend's new boyfriend, had made prior threats, entered former girlfriend's apartment late at night and held new boyfriend at gunpoint for several minutes before shooting him four times); *Hannah v. State*, 751 So. 2d 79, 81 (Fla. 2d DCA 1999) (defendant shot victim twice after "bursting" into victim's hotel room in early morning hours with gun in hand and with intention to rob victim by use of intimidation); *Griggs v. State*, 753 So. 2d 117, 120 (Fla. 4th DCA 1999) (evidence supported conclusion that during commission of armed robbery, defendant shot at victim five times during continual struggle that commenced inside store and ended outside store); *Alcott v. State*, 728 So. 2d 1173, 1175 (Fla. 4th DCA 1998) (during commission of armed robbery, defendant shot victim without provocation).

We agree with the State that Barnes' trial counsel failed to properly raise the premeditation issue below. As a result, the error was not preserved. Furthermore, we are precluded from reviewing the error under the fundamental error doctrine. There are only two instances in which an unpreserved challenge to the sufficiency of the evidence can be reviewed: (1) the mandatory review by the Florida Supreme Court of the evidence by which a capital defendant was convicted and sentenced to death; and (2) where there is insufficient evidence that the defendant committed *any* crime. *Monroe v. State*, 191 So. 3d 395, 404 (Fla. 2016). Neither situation is applicable here.

However, we conclude that this case is one of the rare examples in which the ineffectiveness of trial counsel is cognizable on direct appeal. Ineffective assistance of counsel is found when counsel's performance falls outside the range of reasonable professional assistance and when there is a reasonable probability that the results of the proceeding would have been different but for the inadequate performance. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). As a general rule, claims of ineffective assistance of counsel may not be raised on direct appeal. *Corzo v. State*, 806 So. 2d 642, 645 (Fla. 2d DCA 2002). However, "appellate courts make an exception to this rule when the ineffectiveness is obvious on the face of the appellate record, the prejudice caused by the conduct is indisputable, and a tactical explanation for the conduct is inconceivable." *Id.*

Here, we cannot perceive any strategic or tactical reason for trial counsel's failure to challenge the sufficiency of the State's premeditation evidence. Barnes' defense to the charge of first-degree murder was that he did not kill the victim and, indeed, was not even in Sanford on the day of the murder. That defense would have been equally applicable to a charge of second-degree murder. Furthermore, given our conclusion that the State's evidence failed to establish premeditation, the prejudice to Barnes is obvious. The failure

9

to seek acquittal on the greater offense caused Barnes to be sentenced to mandatory life imprisonment without the possibility of parole. *See Monroe*, 191 So. 3d at 403-04 (holding that prejudice was obvious where counsel's failure to seek acquittal on greater offenses caused defendant to be sentenced to mandatory life imprisonment without possibility of parole).

Finally, "it would be a waste of judicial resources to wait until [Barnes] seeks postconviction relief for ineffective assistance of counsel when the unreasonableness of the actions of trial counsel and the prejudice to [Barnes] are indisputable from the face of the record before us." *Id.* at 404.

We direct the trial court to vacate Barnes' first-degree murder conviction, enter a judgment for second-degree murder, and sentence Barnes accordingly. *See* § 924.34, Fla. Stat. (2014).[6]

AFFIRMED, in part; REVERSED, in part; and REMANDED with directions.


BERGER and WALLIS, JJ., concur.

---

[6] Section 924.34, Florida Statutes (2014), provides:

> When evidence sustains only conviction of lesser offense.–
>
> When the appellate court determines that the evidence does not prove the offense for which the defendant was found guilty but does establish guilt of a lesser statutory degree of the offense or lesser offense necessarily included in the offense charged, the appellate court shall reverse the judgment and direct the trial court to enter judgment for the lesser degree of the offense or for the lesser included offense.

10